Case 1:04-cr-20159-ASG   Document 3-1   Entered on FLSD Docket 03/18/2004   Page 1 of 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-20159 CR - GOLD

18 U.S.C. § 1962(d)
18 U.S.C. § 1955

MAGISTRATE JUDGE
SIMONTON

UNITED STATES OF AMERICA

v.

JOSE MIGUEL BATTLE, SR.,
  a/k/a "Jose Miguel Battle-Vargas,"
  a/k/a "Jose M. Battle,"
  a/k/a "Jose M. Batlle,"
  a/k/a "Alfredo Walled,"
  a/k/a "Alfred Walled,"
MANUEL ISAAC MARQUEZ, SR.,
  a/k/a "Manuel Isaac Marquez-Lopez,"
  a/k/a "Manuel I. Marquez,"
  a/k/a "Manuel Marquez, Jr.,"
  a/k/a "Nene,"
  a/k/a "Chato,"
LUIS DeVILLIERS, SR.,
JOSE MIGUEL BATTLE, JR.,
  a/k/a "Jose R. Battle,"
  a/k/a "Jose Miguel Battle Rodriguez,"
  a/k/a "Jose Rodriguez Battle,"
  a/k/a "Jose Rodriguez Batlle,"
  a/k/a "Mike Battle,"
  a/k/a "Mike Jr.,"
  a/k/a "Miguelito,"
ABRAHAM RYDZ,
  a/k/a "Abraham Rydz Neiman,"
  a/k/a "Alberto Rydz,"
  a/k/a "El Polaco,"
JULIO ACUNA,
  a/k/a "Chino,"
ORESTES VIDAN,





GUSTAVO BATTLE,
GUMERSINDO GONZALEZ,
  a/k/a "Gumbersindo Gonzalez,"
LUIS PEREZ,

LUIS DeVILLIERS, JR.,
MAURILIO FRANCISCO MARQUEZ,
ANDRES DeVILLIERS,
JORGE DAVILA,
  a/k/a "Jorge DaVilla,"
  a/k/a "George DaVila,"
  a/k/a "Tony Davila,"
VIVIAN RYDZ,
  a/k/a "Vivian Rydz-Diaz,"
JOSE ALUART,
  a/k/a "Five-to-Six,"
JORGE NUNEZ,
NORBERTO FERNANDEZ,
ARGELIO JIMENEZ,
  a/k/a "Cache,"
MORDEHAY TAKO,
YORAM IZHAK,
  a/k/a "Yoram Ithak,"
  a/k/a "Yoram Izhaz,"
  a/k/a "Yoram Ithac,"
  a/k/a "Izhak Yoram,"
TOMAS CABRERIZO,
EVELYN MARIBEL RUNCIMAN,
and
VALERIO CERRON,
  a/k/a "Valerio Cerron Calixto,"

    Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

2

## COUNT ONE

At all times relevant to this indictment:

1. All defendants are hereinafter referred to by their name without reference to any alias "a/k/a" name or names by which they may be known.

## THE ENTERPRISE

2. An international criminal organization known by various names, including the "Corporation" and the "Cuban Mafia" (hereinafter the "CORPORATION"), existed promoting and carrying on illegal activities in the United States, the Caribbean, Europe, and Central and South America, and consisted of the defendants named in this indictment and others known and unknown to the Grand Jury.

3. The CORPORATION, including its leadership, membership and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals and entities associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the CORPORATION. The CORPORATION was engaged in, and its activities affected, interstate and foreign commerce.

## THE STRUCTURE AND OBJECTIVES OF THE ENTERPRISE

4. The CORPORATION utilized a differentiation of roles in its membership and associates that facilitated and achieved the objectives and purposes of the CORPORATION, that is, to profit from and establish, operate, manage, facilitate, enhance, conceal, promote and protect the CORPORATION and its members, associates, activities and objectives.

3

5. The structure of the CORPORATION included, but was not limited to, the following:

a. The CORPORATION was run and supervised by an overall leader known by several names including the "Padrino," the "Godfather," the "Chairman of the Board," and the "Chairman" of the "Board of Directors" (hereinafter "Padrino"). The Padrino was assisted by a second-in-command leader known by several names including the "Vice Chairman" and the "Number Two Man" (hereinafter "The Vice Chairman"). The Padrino and the Vice Chairman were both assisted by a lead advisor known by several names including the "Consejero" and the "Counselor" (hereinafter the "Consejero"). With the assistance of the Vice Chairman and the Consejero, the Padrino was responsible for setting CORPORATION policy, resolving disputes between members of the CORPORATION and the members of other criminal organizations, and approving all significant actions committed by the members and associates of the CORPORATION. In return for promoting the ongoing criminal activities of the CORPORATION and for providing administration, protection, and support, the top leadership of the CORPORATION, that is, the Padrino, the Vice Chairman, the Consejero, and others (hereinafter the "hierarchy of the CORPORATION"), all demanded and received a special portion of the criminal proceeds generated by the members and associates of the CORPORATION. The hierarchy of the CORPORATION, and other key positions in the CORPORATION, consisted primarily of persons with a cultural, familial, and long-standing personal relationship with the CORPORATION's Padrino;

b. The CORPORATION operated through groups of individuals known by several names including "Divisions" and "Crews" (hereinafter "Divisions"). Each Division consisted of individuals acting in various roles including the positions of "Lieutenants," "Soldiers," and "Operators," and other members and associates of the CORPORATION;

4

c. The CORPORATION operated through middle-level supervisors known by several names including "Jefes," "Bosses," "Captains" and "Directors" (hereinafter "Jefes"). Each Jefe headed a Division of the CORPORATION and remained responsible for supervising the criminal activities of his or her Division and for providing its members and associates with support and protection, and in return, each Jefe demanded and received a special portion of the criminal proceeds generated by the Division's members and associates. Each Jefe was tasked with controlling and overseeing various segments of the CORPORATION's illegal activities and serviced specific geographic areas in which the CORPORATION operated. These assignments included, but were not limited to, Divisions specializing in the control of illegal gambling operations and the laundering of illegal funds, as well as enforcing CORPORATION policy;

d. The CORPORATION operated through Divisions that employed members and associates of the CORPORATION known by several names including "Enforcers" (hereinafter "Enforcers") who both committed, and threatened to commit, acts of violence and the destruction of property in furtherance of the CORPORATION's activities and purposes, including the enforcement of discipline among its members and associates, the intimidation and elimination of competition by individuals and groups not associated with the CORPORATION, as well as the inducement of fear of both physical and financial injury to the members and associates of the CORPORATION and to outsiders, including victims and witnesses;

e. The CORPORATION operated through members and associates known by various names including "Bankers" (hereinafter "Bankers") who worked in the CORPORATION's illegal gambling operations financing the gambling risks associated with the Divisions assigned to them. Whenever Bankers faced excessive risk, the Bankers limited their financial exposure or accepted

5

high gambling risks by transferring the excess risk to the CORPORATION and by transferring the excess risk to larger Bankers in the CORPORATION known by various names including "Super Bankers" (hereinafter "Super Bankers"); and

  f. From time to time, various members and associates of the CORPORATION were temporarily appointed to the positions of the Padrino, the Vice Chairman, and the Consejero, as well as individual Jefes and other roles within the CORPORATION. When this occurred, such individual functioned in an "acting" capacity for a CORPORATION member and associate who, for the sake of the CORPORATION, needed to temporarily reduce his or her criminal activities due to being an incarcerated inmate, fleeing fugitive, and otherwise incapacitated CORPORATION member and associate. When this occurred, such member and associate would continue to participate in the operations of the CORPORATION and would hold the official, as opposed to acting, position with the organization.

  6. The objectives and purposes of the CORPORATION included, but were not limited to, the following:

  a. The CORPORATION enriched its members and associates through various forms of illegal activity, including but not limited to, acts of murder, money laundering, and the operation of illegal gambling businesses and the illegal trafficking of controlled substances and stolen property;

  b. The CORPORATION promoted and enhanced itself and the activities of its members and associates;

  c. The CORPORATION preserved and protected its power, territory, operations, and profits through the use of violence and destruction, including but not limited to, acts of murder, arson, and assault;

6

d. The CORPORATION kept its victims and rivals in fear of it, and in fear of its members and associates, through intimidation and threats of violence and destruction; and

e. The CORPORATION undertook all steps necessary to prevent the detection of its criminal activities, and sought to prevent and resolve the imposition of any criminal and civil liabilities upon the CORPORATION and its members and associates, including but not limited to, the use of murder and intimidation directed against witnesses, victims, and others.

## THE ROLES IN THE ENTERPRISE

7. The defendants performed multiple roles during and in furtherance of this conspiracy that included, but were not limited to, the following:

a. **JOSE MIGUEL BATTLE, SR.,** was a member of the CORPORATION, the original "Padrino," and head of the CORPORATION. He later became an active and advisory supervisor for the CORPORATION;

b. **MANUEL ISAAC MARQUEZ, SR.,** was a member of the CORPORATION, a "Jefe," and boss in charge of a gambling Division in the CORPORATION who was later promoted to "Vice Chairman" and second-in-command of the CORPORATION during which time period his responsibilities included overseeing all illegal "sports bookmaking" Divisions. Later, **MANUEL ISAAC MARQUEZ, SR.,** became the new "Padrino" and head of the CORPORATION;

c. **LUIS DeVILLIERS, SR.,** was a member of the CORPORATION, a "Jefe," and boss in charge of a gambling Division in the CORPORATION who was placed in charge of a Division primarily responsible for the production, distribution, and operation of illegal video slot machines. Later, **LUIS DeVILLIERS, SR.,** became the acting "Consejero" and counselor of the

CORPORATION;

d. **JOSE MIGUEL BATTLE, JR.,** was a member of the CORPORATION, a "Jefe," and boss in charge of a gambling Division in the CORPORATION. Later, **JOSE MIGUEL BATTLE, JR.,** was promoted to the position of "Consejero" and counselor of the CORPORATION, during which time period he was in charge of overseeing all money laundering activities of the CORPORATION. Later, **JOSE MIGUEL BATTLE, JR.,** became the "Vice Chairman" and second-in-command of the CORPORATION. Later, **JOSE MIGUEL BATTLE, JR.,** became the acting "Padrino" and acting head of the CORPORATION;

e. **ABRAHAM RYDZ** was a member of the CORPORATION and a "Jefe" in charge of a money laundering and "sports bookmaking" Division in the CORPORATION. Later, **ABRAHAM RYDZ** became the "Consejero" and counselor of the CORPORATION. Later, **ABRAHAM RYDZ became the acting "Vice Chairman"** and acting second-in-command of the CORPORATION;

f. **JULIO ACUNA** was a member of the CORPORATION and an "Enforcer" for the CORPORATION who committed violence and murder on behalf of the CORPORATION and who later became a "Jefe" and boss in charge of a Division assigned to enforcement duties and illegal gambling operations;

g. **ORESTES VIDAN** was a member of the CORPORATION, a "Jefe," and boss in charge of a money laundering and illegal lottery gambling Division in the CORPORATION;

h. **GUSTAVO BATTLE** was a member of the CORPORATION, a "Jefe," and boss in charge of an illegal narcotics Division in the CORPORATION who was later placed in charge of a Division responsible for the production, distribution, and operation of illegal gambling machines;

8

i. **GUMERSINDO GONZALEZ** was a member of the CORPORATION, a "Jefe," and boss in charge of a gambling Division in the CORPORATION who was also responsible for overseeing all of the CORPORATION's illegal gambling operations in the New Jersey area;

j. **LUIS PEREZ** was a member of the CORPORATION and a "Banker" in charge of a gambling Division in the CORPORATION;

k. ■■■■■■■■■■■■■■■■ was a member of the CORPORATION, a "Jefe," and boss in charge of a gambling Division in the CORPORATION who was also responsible for identifying new illegal gambling locations and for recruiting entry level personnel to start up new gambling operations for the CORPORATION;

l. **LUIS DeVILLIERS, JR.,** was a member of the CORPORATION, a "Jefe," and boss in charge of multiple Divisions in the CORPORATION assigned to illegal gambling and slot machines, and a manager and operator of illegal gambling operations for the CORPORATION who supervised the production and distribution of illegal gambling supplies and equipment. He also acted as a courier and smuggler of large sums of currency and monetary instruments on behalf of the CORPORATION. Later, **LUIS DeVILLIERS, JR.,** became a supervisor in charge of overseeing the CORPORATION's illegal operations in the New York area;

m. **MAURILIO FRANCISCO MARQUEZ** was a member of the CORPORATION and a manager and operator of money laundering operations for the CORPORATION in the United States and in other countries who also acted as a courier and smuggler of large sums of currency and monetary instruments on behalf of the CORPORATION;

n. **ANDRES DeVILLIERS** was a member of the CORPORATION and a manager and operator of money laundering operations for the CORPORATION who also acted as a courier and

9

smuggler of large sums of currency and monetary instruments on behalf of the CORPORATION;

 o. **JORGE DAVILA** was a member of the CORPORATION and a "Banker" in charge of a gambling Division in the CORPORATION;

 p. **VIVIAN RYDZ** was a member of the CORPORATION and a "Banker" in charge of a gambling Division in the CORPORATION;

 q. **JOSE ALUART** was a member of the CORPORATION, an "Enforcer" acting as the personal bodyguard of the "Padrino" of the CORPORATION, and a courier and smuggler of large sums of currency and monetary instruments on behalf of the CORPORATION;

 r. **JORGE NUNEZ** was a member of the CORPORATION and a "Banker" in charge of a gambling Division in the CORPORATION;

 s. **NORBERTO FERNANDEZ** was a member of the CORPORATION and a "Banker" in charge of a gambling Division in the CORPORATION;

 t. **ARGELIO JIMENEZ** was a member of the CORPORATION and an "Enforcer" who worked doing enforcement duties and acted as the personal bodyguard of the "Padrino" of the CORPORATION;

 u. **MORDEHAY TAKO** was an associate of the CORPORATION and a manager and operator of money laundering operations for the CORPORATION who also conducted the CORPORATION's illegal operations as an officer and operator of various businesses;

 v. **YORAM IZHAK** was an associate of the CORPORATION and a manager and operator of money laundering operations for the CORPORATION who also conducted the CORPORATION's illegal operations as an officer and operator of various businesses;

 w. **TOMAS CABRERIZO** was an associate of the CORPORATION and a manager and