operator of money laundering operations for the CORPORATION who also conducted the CORPORATION's illegal operations as an officer and operator of various businesses;

 x. **EVELYN MARIBEL RUNCIMAN** was an associate of the CORPORATION and a manager and operator of money laundering operations for the CORPORATION who also conducted the CORPORATION's illegal operations through various businesses; and

 y. **VALERIO CERRON** was an associate of the CORPORATION and a manager and operator of money laundering operations for the CORPORATION who also conducted the CORPORATION's illegal operations through various businesses.

## THE RACKETEERING CONSPIRACY

 8. From in or about 1964, and continuing through to the date of the return of this indictment, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendants,

> JOSE MIGUEL BATTLE, SR.,
> MANUEL ISAAC MARQUEZ, SR.,
> LUIS DeVILLIERS, SR.,
> JOSE MIGUEL BATTLE, JR.,
> ABRAHAM RYDZ,
> JULIO ACUNA,
> ORESTES VIDAN,
> GUSTAVO BATTLE,
> GUMERSINDO GONZALEZ,
> LUIS PEREZ,
> ███████████████,
> LUIS DeVILLIERS, JR.,
> MAURILIO FRANCISCO MARQUEZ,
> ANDRES DeVILLIERS,
> JORGE DAVILA,
> VIVIAN RYDZ,
> JOSE ALUART,
> JORGE NUNEZ,

11

NORBERTO FERNANDEZ,
ARGELIO JIMENEZ,
MORDEHAY TAKO,
YORAM IZHAK,
TOMAS CABRERIZO,
EVELYN MARIBEL RUNCIMAN,
and
VALERIO CERRON,

and others known and unknown to the Grand Jury, being persons employed by and associated with an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, that is, the CORPORATION, as alleged herein in paragraphs 2 through 5 of this count of the indictment, did knowingly, intentionally, and willfully, combine, conspire, confederate, and agree with each other, to violate Title 18, United States Code, Section 1962(c), that is, to unlawfully conduct and participate, directly and indirectly, in the conduct of the affairs of such CORPORATION, through a pattern of racketeering activity as alleged herein in paragraph 10 of this count of the indictment.

9.   It was a further part of the conspiracy that the defendants agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## THE PATTERN OF RACKETEERING ACTIVITY

10.   The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1), and 1961(5), consisted of the following:

a.   Multiple acts and threats involving murder in violation of Title 46, Florida Statutes, Section 782.04;

b.   Multiple acts and threats involving murder in violation of New York Penal Law, Section 125;

12

c.  Multiple acts and threats involving gambling in violation of Title 46, Florida Statutes, Sections 849.01, 849.09(1)(a)-(d), 849.10, and 849.25;

d.  Multiple acts and threats involving gambling in violation of New Jersey Statutes Annotated, Sections 2C:37-2, 2C:37-3, and 2C:37-4;

e.  Multiple acts and threats involving gambling in violation of New York Penal Law, Sections 225.10 and 225.20;

f.  Multiple acts and threats involving arson in violation of New York Penal Law, Section 150.20;

g.  Multiple acts indictable under Title 18, United States Code, Section 659, that is, felonious acts of buying, receiving, and possessing property stolen from interstate and foreign shipments;

h.  **Multiple acts indictable under** Title 18, United States Code, Section 1084, that is, interstate and foreign transmission of wagering information;

i.  Multiple acts indictable under Title 18, United States Code, Section 1952, that is, interstate and foreign travel and transportation in aid of racketeering enterprises;

j.  Multiple acts indictable under Title 18, United States Code, Section 1953, that is, interstate and foreign transportation of wagering paraphernalia;

k.  Multiple acts indictable under Title 18, United States Code, Section 1955, that is, illegal gambling businesses;

l.  Multiple acts indictable under Title 18, United States Code, Sections 1956(a) and 1956(h), that is, laundering of monetary instruments and conspiring to launder monetary instruments;

m.  Multiple acts indictable under Title 18, United States Code, Section 1958, that is, use

of interstate and foreign commerce facilities in the commission of murder-for-hire; and

n.  Multiple offenses involving the felonious manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance and listed chemical as defined in Section 102 of the Controlled Substances Act, punishable under Title 21, United States Code, Sections 841(a)(1), 846, and 841(b)(1)(A).

## THE MANNER AND MEANS OF THE CONSPIRACY

11.  The manner and means through which the defendants, and others employed by and associated with the CORPORATION, conducted and participated in the conduct of the affairs of the CORPORATION, and acted in furtherance of its purposes and this conspiracy, included, but were not limited to, the commission of the following acts, schemes, and objectives:

a.  The members and associates of the CORPORATION, despite being in certain cases ex-felons and persons otherwise prohibited from possessing firearms and other dangerous weapons, did routinely and unlawfully arm themselves with such weapons in order to protect their own territory, personnel, and illegal operations, and in order to eliminate competition and to deter and retaliate against attacks from rival criminal organizations and persons;

b.  The CORPORATION generated profits for its members and associates, and financed its activities through funds obtained in the illegal trafficking of controlled substances. During the CORPORATION's illegal drug trafficking schemes, from at least in or about 1970, and continuing through to at least in or about 1992, and thereafter, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida and elsewhere, the members and associates of the CORPORATION did import and possess with the intent to distribute, multiple

14

kilogram shipments of cocaine and marijuana, and conspired to do so, all in violation of the narcotics laws of the United States;

  c. The CORPORATION generated profits for its members and associates, and financed its activities through funds obtained in various illegal gambling schemes, including the operation of illegal gambling lotteries, commonly known as "Bolita," "Policy," and "Numbers," the business of wagering on sporting events commonly known as "sports bookmaking," and the development and operation of illegal gambling machine establishments, including the illegal use of "video slot" machines and "video poker" machines. During the CORPORATION's illegal gambling schemes, from in or about 1964, and continuing through to the date of the return of this indictment, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida and elsewhere, the members and associates of the CORPORATION did commit multiple felony gambling offenses in violation of the laws of the United States, and the State of Florida, the State of New Jersey, and the State of New York;

  d. The CORPORATION's illegal money laundering schemes included a scheme involving a series of "puppet" companies, businesses, and assets (hereinafter "PUPPET COMPANIES"). During the PUPPET COMPANIES scheme, from at least in or about 1988, and continuing through to the date of the return of this indictment, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida and elsewhere, the members and associates of the CORPORATION did violate the money laundering laws of the United States through various means, including using the PUPPET COMPANIES, and the transfer and commingling of illegal funds through and with other funds and accounts, as well as the creation and perpetuation of "sham" businesses, investments, and employment positions that appeared to be

15

legitimate but were, in fact, a covert method of money laundering, all as an instrument to promote their illegal activities, conceal their illegal proceeds, and avoid their reporting obligations as required by law; and

e. The CORPORATION's illegal money laundering schemes included a scheme involving a business venture known as the "Crillon" (hereinafter "CRILLON"). During the CRILLON scheme, from at least in or about December 1992, and continuing through to the date of the return of this indictment, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida and elsewhere, the members and associates of the CORPORATION did violate the money laundering laws of the United States through various means, including using the development, construction, renovation, ownership, management, operation, and planned sale and wind-up of the CRILLON and its assets, including a casino and hotel complex in Lima, Peru, all as an instrument to promote their illegal activities, conceal their illegal proceeds, and avoid their reporting obligations as required by law.

All of the above in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

1. From in or about October 15, 1970, and continuing through to the date of the return of this indictment, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendants,

>JOSE MIGUEL BATTLE, SR.,
>MANUEL ISAAC MARQUEZ, SR.,
>LUIS DeVILLIERS, SR.,
>JOSE MIGUEL BATTLE, JR.,
>ABRAHAM RYDZ,
>JULIO ACUNA,
>ORESTES VIDAN,
>GUSTAVO BATTLE,

GUMERSINDO GONZALEZ,
LUIS PEREZ,

LUIS DeVILLIERS, JR.,
MAURILIO FRANCISCO MARQUEZ,
ANDRES DeVILLIERS,
JORGE DAVILA,
VIVIAN RYDZ,
JOSE ALUART,
JORGE NUNEZ,
NORBERTO FERNANDEZ,
ARGELIO JIMENEZ,
MORDEHAY TAKO,
YORAM IZHAK,
TOMAS CABRERIZO,
EVELYN MARIBEL RUNCIMAN,
and
VALERIO CERRON,

together with other persons known and unknown to the Grand Jury, knowingly and willfully conducted, financed, managed, supervised, directed, and owned an illegal gambling business, in violation of the laws of the State of Florida, specifically Section 849.09 Florida Statutes, that is, an illegal lottery operation, commonly known as "bolita" and "numbers," which operation involved five or more persons in its conduct, financing, management, supervision, direction and ownership, and had a gross revenue of two thousand dollars ($2,000) or more on one or more single days, and was in substantially continuous operation for a period in excess of thirty (30) days.

All in violation of Title 18, United States Code, Sections 1955 and 2.

## CRIMINAL FORFEITURE

1. The allegations of all counts of this indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to the provisions of Title 28, United States Code, Section 2461 and Title 18, United States

17

Code, Section 981(a)(1)(C) and pursuant to Title 18, United States Code, Section 1955(d).

    2.    Upon conviction of the offense alleged in Count Two, the defendants,

JOSE MIGUEL BATTLE, SR.,
MANUEL ISAAC MARQUEZ, SR.,
LUIS DeVILLIERS, SR.,
JOSE MIGUEL BATTLE, JR.,
ABRAHAM RYDZ,
JULIO ACUNA,
ORESTES VIDAN,
GUSTAVO BATTLE,
GUMERSINDO GONZALEZ,
LUIS PEREZ,

[REDACTED]

LUIS DeVILLIERS, JR.,
MAURILIO FRANCISCO MARQUEZ,
ANDRES DeVILLIERS,
JORGE DAVILA,
VIVIAN RYDZ,
JOSE ALUART,
JORGE NUNEZ,
NORBERTO FERNANDEZ,
ARGELIO JIMENEZ,
MORDEHAY TAKO,
YORAM IZHAK,
TOMAS CABRERIZO,
EVELYN MARIBEL RUNCIMAN,
and
VALERIO CERRON,

shall forfeit to the United States, certain property in which the defendants have an interest, specifically all property, real or personal, constituting or derived from proceeds traceable to a violation of Title 18, United States Code, Section 1955, and any property, including money, used in violation of the provisions of Title 18, United States Code, Section 1955, including but not limited to, the approximate sum of at least $1,571,400,000.00, in United States currency as of the date of the return of this indictment, and specifically includes the following:

18

a.  Bank of America Accounts including:

(1) Account #366-050-5832, Tomas Cabrerizo, Escrow Account, C/O 201 S. Biscayne Blvd. Suite 1970, Miami, Florida 33131;

(2) Account #366-035-2462, Trends Clothing Corp., Escrow Account, 7600 W 20 Ave., Suite 213, Hialeah, Florida 33016; and

(3) Account # 0036 7479 1360, Orestes Vidan, 10325 S.W. 87 Ct, Miami, Florida.

b.  Chevy Chase Bank Accounts including:

(1) Account # 900099933, Orestes or Gladys Vidan, Chevy Chase Bank # 255071981, 10325 S.W. 87 Ct, Miami, Florida.

c.  Continental Bank Accounts including:

(1) **Account # 3001-162-7**, Jose M. Battle; and

(2) Account # 3020-103-5, Jose M. Battle.

d.  Eastern National Bank Accounts including:

(1) Savings Account # 6800204125, Yoram Ithak;

(2) Savings Account Acct. # 6800756620, Yoram Ithak;

(3) Checking Account Acct. # 6800204108, Yoram Ithak;

(4) Checking Account Acct. # 6801559306, Yoram Ithak; and

(5) Checking Account Acct. # 6900834506, Medley Commercial Center.

e.  First Union Bank/Wachovia Accounts including:

(1) Account # 1856203339691, Orestes Vidan, 10325 S.W. 87 Ct, Miami, Florida; and

19

(2) CAP Account # 9984203047, Orestes Vidan, 10325 S.W. 87 Ct, Miami, Florida.

f.  Great Western Accounts including:

(1) Account #179-419524-8, Rodger's Office Supply, Great Western Bank #267084131, 1705 W. 39 Place, Hialeah, Florida;

(2) Account #6338418194, Rodger's Office Supply, Great Western Bank #267091263, 1705 W. 39 Place, Hialeah, Florida;

(3) Account #179419524-8, Rodger's Office Supply, Great Western Bank #267091263, 1705 W. 39 Place, Hialeah, Florida; and

(4) Account #6338401430, Orestes and Glady's Vidan, Great Western Bank #267091263, 10325 S.W. 87 Ct, Miami, Florida.

g.  Ocean Bank Accounts including:

(1) Account # 60609755386 (Real Estate), Jose M. Battle, Ocean Bank #066011392;

(2) Account # 0606097553-11, Jose R. & Grace Battle, Ocean Bank # 066011392, 605 Warren Ln, Key Biscayne, Florida;

(3) Account # 0606111319-05, Biscayne Coast Investments, Ocean Bank #066011392, 5340 N.W. 161 St., Miami, Florida 33014;

(4) Account # 0606111319-06, Biscayne Coast Investments, Ocean Bank #066011392, 5340 N.W. 161 St., Miami, Florida 33014;

(5) Account # 0606111319-05, Biscayne Coast Investments, Ocean Bank #066011392, 5340 N.W. 161 St., Miami, Florida 33014;