*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF FLORIDA*
*MIAMI DIVISION*



FILED by _____ D.C
CT. REP.

MAR 3 0 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES OF AMERICA,

                                    Case 04-20159-Cr-GOLD

                    Plaintiff,

        vs.                          MIAMI, *FLORIDA*
                                     MARCH 24, 2004

ABRAHAM RYDZ, et al.,

                    Defendants.

_____

            TRANSCRIPT OF PRETRIAL DETENTION HEARING
          BEFORE THE HONORABLE STEPHEN T. BROWN,
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE GOVERNMENT:

                        BY: JOHN ROBERT BLAKEY, A.U.S.A.
                        *United States Attorney's Office*
                        8245 N.W. 53rd Street
                        Miami, FL   33166

FOR THE DEFENDANT:

                        RICHARD A. SHARPSTEIN, ESQ.
                        727 Brickell Avenue
                        Suite 500
                        Miami, Florida 33132

REPORTED BY:            JERALD M. MEYERS, RPR-CM
                        Miami, FL   33128-7797 - 305/374-8108

STENOGRAPHICALLY REPORTED COMPUTERIZED TRANSCRIPTION

1   (Call to order of the Court)

2            THE COURT:  Go ahead, Stef.

3            THE CLERK:  The top of page 1, the United States

4   of America versus Abraham Rydz, case number 04-20159-

5   Criminal-Gold.

6            THE COURT:  All right.  Mr. Blakey, are you ready

7   to proceed with a detention hearing?

8            MR. BLAKEY:  Yes, Your Honor.

9            THE COURT:  Risk of flight, danger or both?

10            MR. BLAKEY:  Both Your Honor.

11            THE COURT:  Okay.  I have a general idea,

12   obviously, of what this case is about.  However, having

13   said that, make whatever record you deem necessary.

14            What I am interested in is why the government is

15   seeking detention as it regards this particular individual.

16   Okay?

17            MR. BLAKEY:  Yes, sir.  I will begin, if I might.

18   Hold on.  There is one general note on the case in general,

19   Your Honor, and it will only take a moment, and then it

20   will be applicable to as all defendants.

21            THE COURT:  Sure.

22            MR. BLAKEY:  And then I will be more specific as

23   to this defendant.

24            As you know, this is a 25 defendant RICO

25   conspiracy indictment which charges the hierarchy of a

*U.S.A. vs Abraham Rydz, et al - 3/24/04*

1   criminal organization known as the Corporation, also known

2   as the Cuban Mafia.

3          Among the pattern of criminal activities engaged

4   in by the co-conspirators, the indictment charges multiple

5   murders, arsons, narcotics trafficking of cocaine and

6   marijuana, interstate theft, illegal gambling and money

7   laundering, as well as other offenses.

8          As to each of the defendants, the gambling and

9   money laundering operations of the corporations are and

10  have been directly supported by arson, murder, witness

11  intimidation.

12         And in previous prosecutions of this

13  organization, witnesses have been murdered prior to trial.

14         The illegal operations have generated millions in

15  unreported income and the indictment seeks, obviously, as

16  you can tell from the charging instrument, over 1.5 billion

17  dollars in forfeitures.

18         As such, the defendants face a 25 year maximum

19  and, obviously, the statutory presumption of pretrial

20  detention applies.

21         Also, as the Court is probably more aware and

22  doesn't need me to elaborate, there has been a practice,

23  and you will see also as we begin to discuss the defendants

24  individually, the practice of misrepresenting and

25  withholding the nature and extent of their assets, and we

*U.S.A. vs Abraham Rydz, et al - 3/24/04*

1    believe that since they possess wealth beyond that

2    currently restrained by the protective orders entered by

3    Judge Gold and Judge Moore, we believe that they are a risk

4    of flight and a danger to the community.

5            If I might now address Mr. Rydz directly, he has

6    recent travel, Your Honor; obviously travel outside the

7    country and also outside the district.

8            He has an adult daughter who is a co-conspirator

9    in this matter.  He has prior felonies, including book

10   making and also a firearms offense.

11           The assets that are listed in the pretrial

12   services report, Your Honor, are misleading.

13           First of all, as to the Ocean Bank items, there

14   is two, I believe, bank accounts.  Both of those are under

15   the protections of the protective order, and we don't

16   believe that they are an adequate source of collateral to

17   insure his appearance.

18           Also, the Ridgewood address 330 is also subject

19   to the protective order, and again is not an adequate

20   collateral.

21           Also, Your Honor, the defendant withheld from or

22   neglected, in giving him the benefit of the doubt, to

23   mention to Pretrial Services the wealth that he kept in a

24   safety deposit box.

25           As part of this operation, multiple search

1  warrants were entered, and we recovered in safety deposit

2  boxes in the defendant's name, a substantial amount of gold

3  coins, antique coins from the 1800's; gold coins and

4  jewelry, and also, Your Honor, you know, the government

5  tries to do the best they can as quick as they can, Your

6  Honor, but sometimes we are not quick enough.

7        The very morning after the take down, if I might

8  approach, Your Honor, this is a photograph of the

9  defendant's wife emptying out a safe deposit box in the

10  defendant's name.  If I might approach, Your Honor?

11        **THE COURT**:  You may.  Show it to Mr. Sharpstein.

12        **MR. BLAKEY**:  This was taken at 9:20 after the

13  take down, Your Honor.  We were not able to get a search

14  warrant in place a to Sun Trust Bank in time.

15        The photograph depicts the wife carrying out a

16  large box, a safety deposit box, and also carrying on her

17  back a napsack, a large backpack, if you will.

18        In light of the search warrants that were

19  executed as to the defendant's other safety deposit boxes,

20  again none of this was mentioned to Pretrial Services.

21        I don't believe it is a far leap for this Court

22  to surmise what was contained in that box, and from that to

23  make a reasonable inference that the defendant has other

24  wealth, Your Honor, with which to reimburse anyone who

25  comes forward to pledge property on this person's behalf.

1           Given the fact that he is looking at a 25 year

2    sentence, Your Honor, we don't believe there is any

3    condition or combination of conditions that could assure

4    his presence for the trial, Your Honor.

5           THE COURT:  Okay.  Anything further, Mr. Blakey?

6           MR. BLAKEY:  No, Your Honor.

7           THE COURT:  Mr. Sharpstein?

8           MR. SHARPSTEIN:  May it please the Court.  First

9    of all, as to the allegations, since this indictment spells

10   none out, I haven't heard Mr. Blakey or anyone from the

11   government, for not that matter, proffer to you, present in

12   any form or fashion, one act that allegedly Mr. Rydz is

13   responsible for during the course of this lengthy

14   racketeering conspiracy.

15          They talk of murders.  They talk of arson.  I

16   don't think anyone has proffered to you his involvement in

17   any of them.  There is no evidence or even allegation of

18   it.

19          Cocaine trafficking, gambling, they run the

20   gambit of crimes, but again say nothing of what, and I have

21   no reason or no ability to approach you to rebut anything

22   because we don't know what they are saying about Mr. Rydz.

23          THE COURT:  Well, let me stop you for just a

24   moment because that is a relevant point.

25          Mr. Blakey, maybe I didn't make myself clear.  I

1   am interested, and I have not read the indictment, and

2   certainly to the extent that I have glanced at it, I

3   haven't memorized it.

4          The indictment clearly is evidence of probable

5   cause, but what is the probable cause or what is it evident

6   of as it regards this defendant in particular?

7          **MR. BLAKEY:**  Your Honor, with respect to this

8   defendant, this is obviously not a substantive RICO count.

9          This is a racketeering conspiracy.  And given the

10  nature and extent of the defendant's activities, a notice

11  pleading, as this is appropriate and will not or it does

12  not allege the defendant did X on, you know, day Y.

13         However, as part of the charging instrument, I

14  don't know if the Court has it in front of you -- I have a

15  copy here -- part of the allegations of the indictment

16  beyond the structure, which is several pages long and the

17  activities objectives and purposes of the Corporation,

18  again which are long, there is a section beginning on page

19  7 of the indictment which lists the roles and the

20  enterprise.

21         **THE COURT:**  That is what I am interested in.  Go

22  ahead.  I have it in front of me.

23         **MR. BLAKEY:**  As to Abraham Rydz, this is on page

24  8, and it is Subparagraph E, Your Honor.  He was a member

25  of the Corporation and a jefe which, obviously, means boss

1   in charge of the money laundering and sports book making

2   division in the Corporation.

3           Later, he became the consejero, or I am

4   mispronouncing it.  I got a C in Spanish in high school --

5   I am trying to do my best -- a counselor of the

6   Corporation.

7           Later he became the acting vice chairman, which

8   means he is the second individual, the second in charge to

9   the Padrino of the entire Corporation.

10          **THE COURT:**  Okay.  Now, then, I will return to

11  Mr. Sharpstein.  Go ahead, then, Mr. Sharpstein.  What

12  else?

13          **MR. SHARPSTEIN:**  I still, Your Honor, am at a

14  loss as to -- I am reading that paragraph.  It says that

15  there a was a jefa in charge of money laundering and sports

16  bookmaking, but has absolutely no allegation -- I am about

17  to proffer to you an employment history of Mr. Rydz that

18  begs to differ with the government's description of him,

19  but again, this indictment spells out a pattern of

20  racketeering activity and lists on page 12, Paragraph 10-A

21  through N, I would say it goes across the board as far as

22  Florida Statutes being alleged and violated from, again,

23  gambling and book making to arson, murder and things of

24  that nature, which in order for me to confront and tell you

25  that this man is not a danger to the community, I don't

1    know what allegation I am confronting.

2            They call him, "El Jefe."  I will have to

3    remember that because my secretary sometimes affectionately

4    refers to me around the office as "El Jefe."  So I am sure

5    I will stop that immediately, but I don't know by the mere

6    allegation that it means anything.

7            THE COURT:  Well, suffice it to say we are not,

8    whether I agree with you or not, it is immaterial.  We are

9    not here to test the sufficiency of the complaint at this

10   time or of the indictment.  Excuse me.

11           MR. SHARPSTEIN:  Right.  I am approaching the

12   danger to the community based upon the allegation.  They

13   have alleged that and have not proven it, and have failed

14   to proof it.

15           Yes, there is probable cause in an indictment,

16   but there is nothing in here that alleges with any

17   specificity so that I can confront it or you can even

18   approach it as to what this man allegedly did or didn't do

19   and when, because if you see, the allegations go back to

20   1964, the year after my personal Bar Mitzvah.

21           I don't really remember that far back, but I

22   don't know whether this is when he supposedly into book

23   making or gambling or what he has done, but I can tell you

24   right now the man has lived here his entire life.

25           If I am approaching risk of flight and danger, so

*U.S.A. vs Abraham Rydz, et al - 3/24/04*

1   that you know, Abraham Rydz is a man who was born in

2   Poland, stopped in Cuba, came to the U.S. when he was a

3   child, ahead of his two brothers that are here that I will

4   refer to.

5         He was raised here.  He grew up here.  He has

6   worked here.  He has employment history in legitimate

7   business over a period of time, and I am going to just

8   briefly summarize for you going back to recent times to the

9   past.

10         He was in the clothing business.  And, as a

11   matter of fact, was in the clothing manufacturing and

12   wholesale business for, oh, about 5 years into the mid 90's

13   when he retired.

14         The name of the company was Guayamar.  It did

15   business here.  It was the Dominican Republic, as you heard

16   from other people in this indictment.  I believe people

17   that bonded out last week, that they are manufacturers of

18   clothing and Dominican clothing that sells to American

19   retailers.

20         He was involved very briefly in the

21   Trans-clothing Company which one of the defendants,

22   Mr. Cabrerizo came before you and posted a bond owned.

23         He owned retail stores called the Arnold stores;

24   7 stores in Florida across Florida from '87 into the early

25   90's.

```
 1              THE DEFENDANT:  97.

 2              MR. SHARPSTEIN:  97?

 3              THE DEFENDANT:  37.

 4              MR. SHARPSTEIN:  Oh.  37 stores.  I am sorry.

 5  Mr. Rydz corrects me.  37 retail stores which he operated

 6  for a period of about 5 years before the entire operation

 7  was sold for a profit.

 8              The union financial research company from '82 to

 9  '87 was a second mortgage company that was quite

10  profitable.  He operated it then.  That's just the last 20

11  years.

12              So has the man amassed a certain amount of

13  personal wealth?  Yes.  Have they alleged where it came

14  from, other than from legitimate sources?  No.

15              We are saying to you that we will be happy to

16  offer to you any more proof necessary or Mr. Rydz'

17  testimony on this issue to say that the man has been a

18  businessman in this community for more than 40 years, but I

19  am giving you the last 20 years where he owned legitimate

20  profit making operations that, yes, resulted in him

21  allowing to amass a small amount of personal wealth which

22  he has invested.

23              He owns a home at 330 Ridgewood which is on Key

24  Biscayne, which is subject to forfeiture that he has owned

25  I think since 1982.  And, as a matter of fact, recently
```

1  renovated where he lives with his wife Margaret, who I will

2  get to, and his daughter Susan for a lengthy period of

3  time.

4         He had bank accounts at Ocean Bank which have now

5  been seized.  There was a safety box which was on the

6  search warrant inventory that I received before we even all

7  got to court on last week, on Friday, I believe, when we

8  appeared before you.  So that was certainly notice that

9  that existed.

10        There is a picture of his wife going to his

11 safety deposit box that she signs on as well as he.  That

12 issue just came up with me.  I don't know how to respond to

13 it at this point, but her husband was arrested.

14        Her house was searched on that day, I believe,

15 and everything else in the world that they own has been

16 frozen with specificity by the mere allegation of this, and

17 I don't mean to insult the charge, but a flimsy indictment

18 as far as a factual basis.

19        I haven't read any affidavits or anything that

20 spells out anything other than what we have addressed.

21        **THE COURT:**  Well, let me get you down to the

22 nitty-gritty question.

23        The nitty-gritty question is, excluding what is

24 subject to the protective order, what do you have to offer

25 this court that will reasonably assure the defendant's

1    appearance?

2         **MR. SHARPSTEIN**:   I have his two brothers that are

3    in front of the court Manolo Rydz lives -- and, by the way,

4    I will just have them stand up. He is in the back row.

5    Stand up, Mr. Rydz.

6         This is Abraham Rydz, his younger brother.

7    Manolo, Manuel as he is known, Manny, is 63 years old.   He

8    has lived here his entire life. He is the younger brother

9    and came across from Cuba shortly after Mr. Rydz in the

10   60's.

11        He owns a home at 19930 Northeast 22nd Avenue in

12   North Miami Beach with his wife Raquel.  This home he just

13   bought 3 years ago after selling his prior home at 2051

14   Northeast 211th Street, North Miami Beach.  That home sold

15   for $350,000.  This new home is worth about $700,000.

16   There is no mortgage.

17        The home has everything.  Mr. Rydz, Manuel Rydz

18   owns, and is supported by a clothing, actually a footwear

19   business that he owns, M & R Import, 2045 Northwest 23rd

20   Court in Miami, which essentially imports and sells

21   athletic footwear.

22        The business does approximately 10 million

23   dollars in gross revenue per year.  It has been in

24   operation for 10 years.

25        He owned another business similar prior.  He also

1    owns 3 retail stores in the Miami area known as Cool J's.

2    Cool and then J apostrophe S.   These are owned by Mr. Rydz

3    and operated here for a profit and, therefore, he not only

4    has his $700,000 home free and clear with his wife, who

5    will be or they will be happy to sign on a bond, but he has

6    substantial assets in his business, which in some form or

7    fashion can satisfy the Court as you just did with prior

8    witnesses in asking them not to sell or alienate any of the

9    assets without first coming to the Court.

10           He is here to testify about his long relationship

11   and good relationship with his brother, his long ties to

12   the community; life long ties and his desire to assist him

13   by assuring you of his presence.

14           His other brother Jack, who is now rising in the

15   second row, Jack is the younger brother, 58 years old.   He

16   lives with his wife Sonia at 21420 Highland Lakes Boulevard

17   Boulevard, also in North Miami Beach, Florida.

18           They own a house there worth $400,000

19   approximately in value.   No mortgages.   It has been paid

20   off over the years through his business which is Custom

21   Ten; ten spelled out, the contractor where he does

22   commercial renovations.

23           He is a sole business proprietor who does

24   sub-contracting work in the Miami area.   This business has

25   been in operation since 1988, and he has owned similar

1    businesses since.

2           The business as we know it, or as it is, does not

3    have assets particularly, but has income.  He would be

4    happy to encumber either his home and/or the business

5    assets in order to support his brother in release.

6           I can say that on a personal note, everything

7    that he owns, the home on Key Biscayne, the bank accounts

8    have been frozen.

9           I can say that we will be happy to,

10   notwithstanding the presumption of innocence and the right

11   that he has to have property free and clear and not seized

12   without due process still in America to pledge that

13   property to you, notwithstanding the fact that I haven't

14   seen an order, but there is probably a judge that has

15   signed some kind of restraining order.

16          I don't know.  All I know is we know the bank

17   accounts are frozen and the house is on the list.

18          He lives at this home with his wife Margaret who

19   is standing now.  Margaret has been married to him 24

20   years.

21          She has a personal situation now that certainly

22   merits the Court's attention.  That is, she was diagnosed

23   last year with cervical cancer and had severe surgery in

24   the middle of last year and had Chemo and radiation therapy

25   which just ended last week.

1          Actually, the last time she went was after court

2    on Friday when she came down here after her husband was

3    arrested.

4          The diagnosis of her cancer is still up in the

5    air.  She hopes that it will be in remission, but it has

6    yet even begun to get to that point.

7          Her husband was assisting her.  Helping her.  He

8    is retired now, taking her to her treatments and tending to

9    the home, as well as taking care of their daughter who is

10   standing, Susan Rydz who is an honor statute at Gulliver

11   Private High School and has already been accepted to attend

12   Tufts University in Medford, Massachusetts; an outstanding

13   university.

14         She's done incredibly well at Gullivers.  She is

15   an honor student and lives at that home with her father and

16   mother.

17         These are ties to the community.  And although I

18   can't proffer anything financially, other than what they

19   have attempted now to seize, these are certainly

20   individuals that will stand by him and have every reason to

21   believe that Mr. Rydz has no reason to flee or go anywhere,

22   but to continue to support his family as he has.

23         They have argued to you that he has traveled.  I

24   have his passport here which I will give it to you now if

25   you want to inspect it.

1          The only travel he has had outside of the country

2    in the past several years I see is travel to the Bahamas

3    where he travels from time to time with his family and

4    personally for pure entertainment at the hotels and

5    casinos.

6          THE COURT:  Save your breath.  I am not persuaded

7    by that.  I am not persuaded in terms of the government's

8    argument.

9          MR. SHARPSTEIN:  I just wanted to say that we

10   have --

11         THE COURT:  I looked at the Pretrial Services

12   report.

13         MR. SHARPSTEIN:  Mr. Rydz has his own personal

14   health issues, and that is that he has heart disease.  The

15   extent of it is still at 17 or 18 years ago he was

16   diagnosed with inoperable heart blockages, and he was told

17   to go home and start taking medication and prepare for the

18   worst.

19         He has lived since then and takes nitroglycerin

20   and 2 or 3 other medications which I can provide to the

21   Court which he needs to take in order to maintain his

22   health.  He is not an extremely mobile person.

23         He does very little other than tend to his

24   family.  We have the name of his doctor on Key Biscayne,

25   Doctor Jerrala who will be available for consultation or

1   testimony or affidavits, or whatever the Court sees fit as

2   far as justifying or substantiating his own condition.

3           This is a man who, from everything other than

4   this indictment, has evidenced to you continuous

5   employment, continuous residence, ties to the community;

6   nothing that I can see as far as danger that I can even

7   rebut because nothing has been put forward.

8           His two brothers that are here to support him are

9   substantial members of the community.  We offer them.  We

10  offer the signature of his ailing wife, and for whatever it

11  is his daughter, I believe she is still a minor, so I don't

12  know if that is of significance to you.  However, her

13  attendance at Tufts is certainly proof that there is

14  substantial ties to the U.S.

15          Therefore, we are offering -- and, by the way, in

16  order to secure himself to the Court, Mr. Rydz is willing

17  to offer to you that he be placed on electronic monitoring.

18          I would say at his expense, but I have to discuss

19  that first because I don't know the ability that he has to

20  do that at this point, but assuming that his family, I

21  believe his family can assist him.

22          We are offering that monitoring be done at his

23  expense.  And if the Court wishes, it can be full time,

24  with the exception of medical and/or personal matters that

25  we could approach pretrial or Your Honor in dealing with

1    it.

2              We are suggesting a million dollar, a million and

3    a half dollar personal surety bond signed by his brothers,

4    co-signed by himself and his family; something of that

5    nature which we believe actively secures a 70 year old man

6    who has done nothing but dedicate himself to the community

7    work and family for 40 years.

8              I think that's sufficient, Your Honor, as far as

9    our argument.  I would be happy to rebut anything made by

10   the government in response.

11             THE COURT:  Before I get to that --

12             MR. SHARPSTEIN:  Yes.

13             THE COURT:  -- and I haven't made a decision yet.

14   I can't order this, and I don't know if you know the answer

15   or if you need to scurry around for a moment -- is the

16   defendant's wife and daughter prepared to surrender their

17   travel documents?

18             MR. SHARPSTEIN:  Yes, Your Honor.

19             THE COURT:  Okay.

20             MR. SHARPSTEIN:  I believe they have them

21   present.  If they don't, we are --

22             THE COURT:  Okay.  I am not worried about that.

23   Mr. Blakey, I will hear further from you if you wish to be

24   heard.

25             MR. BLAKEY:  Your Honor, I believe I mentioned

*U.S.A. vs Abraham Rydz, et al - 3/24/04*

1   the prior felonies the defendant has been convicted of,

2   including bookmaking and firearms.

3          Also, his position as the number 2 person in this

4   racketeering conspiracy involving murder and arson, and I

5   would direct you, Your Honor, to if I might, to one of the

6   purposes of the Corporation.

7          **THE COURT:**  I have the indictment here, so you

8   can tell me.

9          **MR. BLAKEY:**  Your Honor, I will refer to it by

10  page.  It is on page 7, Your Honor.

11         "The Corporation undertook all steps necessary to

12  prevent the detection of its criminal activities and sought

13  to prevent and resolve the imposition of any criminal and

14  civil liabilities upon the Corporation and its members and

15  associates, including but not limited to the use of murder

16  and intimidation against witnesses, victims and others."

17         In fact, the United States will seek later in

18  these proceedings to delay compliance with the standing

19  discovery order and in the interests of protecting

20  witnesses in this matter.

21         Your Honor, the defendant stands before you as

22  the second person in this indictment in terms of current

23  organization and supervisory authority within this criminal

24  organization and has shown to you, through his Pretrial

25  Services report, that he is not being straight with the

1   Court.

2          It took search warrants executed by the United

3   States, contemporaneous with the arrest, to ascertain that

4   he has hidden wealth.

5          Not only is he misrepresenting himself within the

6   Pretrial Services report, but he has people on the outside.

7   His wife, who is raiding the box on 9-20, the day after the

8   take down.

9          Your Honor, I have no qualms with the way

10  obviously counsel has presented it.  He is a very talented

11  advocate, but, Your Honor, the person who stands before you

12  is not the person who has been presented by defense

13  counsel.  This person must be detained.

14          MR. SHARPSTEIN:  You know, Your Honor, I don't

15  want to go on because I know you have a lengthy day today,

16  but again, not one allegation that Mr. Rydz made a phone

17  call to have someone murdered or who participated in a

18  murder and arson.  What I read in there is that he had

19  something to do with gambling, and that's it.

20          THE COURT:  Okay.

21          MR. SHARPSTEIN:  By the way, the conviction so

22  you know, we are clear, 40 years ago he was   --

23          THE COURT:  Thank you.  I have heard the argument

24  of counsel and the evidence before this Court.

25          I am concerned about the allegations in the

*U.S.A. vs Abraham Rydz, et al - 3/24/04*

1    indictment.   However, I do not find, by clear and

2    convincing evidence, that the defendant constitutes a

3    danger to the community such that detention is the only

4    alternative.

5              Even before Mr. Sharpstein brought it up, the

6    weapons charge is 38 years old, and that's even old by my

7    standards, and the bookmaking charge is from 1996 and

8    resulted in one year of probation.

9              I am denying the government's request for

10   detention based on danger.   I am also denying the

11   government's request for detention based on risk of flight,

12   since the only evidence of risk of flight is the alleged

13   hidden wealth.

14             There is no evidence here as to where he is going

15   to go.   He has no ties any place but South Florida.

16             The travel to Nassau, if that became a criterion,

17   we would all be in serious trouble, and it is the only

18   evidence of travel outside the country.   I think the

19   government's painting of that as somehow significant is a

20   little bit unreasonable.

21             At any rate, having said all of that, I still

22   find the charges here extremely serious, and I do think a

23   serious bond is appropriate.

24             What I am going to set is this:   I am going to

25   set a $250,000 corporate surety bond.

```
 1            I am also going to set a one and a half million
 2    dollar 10 percent bond.  That bond is to be co-signed by
 3    the defendant's two brothers and their wives.
 4            I am setting a Nebbia condition on the entire
 5    bond.  The additional conditions of bond will be as
 6    follows:
 7            The defendant is to surrender his travel
 8    documents, as well as his wife's documents and daughter's,
 9    as represented by Mr. Sharpstein.
10            He is to be placed on 24 hour electronic
11    monitoring.  The language that pretrial used earlier
12    becomes appropriate here, at pretrial's or the defendant's
13    expense, depending on his ability to pay.
14            He is only allowed to get out for health reasons
15    upon prior approval of pretrial, unless there is an
16    emergency, or for consultation with counsel or to appear in
17    connection with this case, again, on prior notification to
18    Pretrial Services.
19            Any other conditions of bond the government
20    wishes this Court to consider before we go further?  I am
21    not done yet.
22            MR. BLAKEY:  Yes, Your Honor.  Could I have one
23    moment, please?
24            THE COURT:  Sure.
25            MR. BLAKEY:  Your Honor, we would ask, and I
```

1   believe this would be a request as to each of the

2   defendants, that they stay away personally from contacting

3   the other defendants or witnesses in the case.

4           THE COURT:  Stop right there.

5           MR. BLAKEY:  Et cetera.

6           THE COURT:  Stop right there.  This defendant is

7   not to have an contact with any of the co-defendants or

8   known witnesses in this case, except through counsel.  Now,

9   go ahead.

10          MR. BLAKEY:  Yes, Your Honor.  With respect to

11  the government's right to appeal the Court's ruling, we

12  would ask that the Court allow us at the end of the call to

13  make whatever record as to whichever defendants we feel it

14  might be appropriate, rather than have to make that

15  decision now.

16          THE COURT:  You don't need to yet, and I will

17  tell you why:  I just said at the beginning I am setting a

18  Nebbia condition.

19          MR. BLAKEY:  Yes, Your Honor.

20          THE COURT:  Okay.  I am not going to allow this

21  bond to be satisfied until we have a Nebbia hearing.

22          MR. BLAKEY:  Okay.

23          THE COURT:  Okay.

24          MR. BLAKEY:  Thank you, Your Honor.

25          THE COURT:  Which means, Mr. Blakey, whether you

```
 1    have asked for it or not, you have got your stay.
 2              MR. BLAKEY:  Thank you, Your Honor.
 3              THE COURT:  If you understand what I am saying.
 4              MR. BLAKEY:  Yes, Your Honor.
 5              THE COURT:  But in the interim, as far as when
 6    that hearing will be, I will let you all talk about when
 7    you want it, with one exception.
 8              It will not be tomorrow.  Okay.  You can read
 9    between those lines, to the extent that you wish to.
10              All right.  Now, last but not least, I want to
11    quickly have the defendant's brothers step forward, please,
12    one at time.
13              Well, if it is okay with the marshals, we can
14    take them both.  Can I take them both?  Thank you.
15              MR. SHARPSTEIN:  Step up to the microphone.
16              THE CLERK:  Will you both please raise your right
17    hands.
18    (Whereupon the witnesses were duly sworn by the Clerk of the
19    Court)
20              THE CLERK:  Will you both, please, state your
21    full names, for the record, and spell your last names.
22              MR. JACOB RYDZ:  My name is a Jacob Rydz,
23    R-y-d-z.
24              THE COURT:  Sir?
25              MR. MANUEL RYDZ:  My name is Manuel Rydz, the
```

1   same spelling.

2          THE COURT:   Okay.   Mr. Mandel Rydz, how are you

3   related to Abraham Rydz?

4          MR. MANUEL RYDZ:   I am his younger brother.

5          THE COURT:   Okay.   And, Mr. Jacob Rydz, how are

6   you related to him?

7          MR. JACOB RYDZ:   I am the youngest brother.

8          THE COURT:   Okay.   Both of you stay by the

9   microphone, please.   You both own homes, correct?

10          MR. MANUEL RYDZ:   Yes.

11          MR. JACOB RYDZ:   Yes, sir.

12          THE COURT:   And both of them are owned by you and

13   your spouse; is that correct?

14          MR. MANUEL RYDZ:   Yes.

15          MR. JACOB RYDZ:   Yes, sir.

16          THE COURT:   Okay.

17          MR. JACOB RYDZ:   That is true, sir.

18          THE COURT:   Okay.   I am not going to spend a lot

19   of time talking to you about the homes, except for two

20   things:

21          Number 1, do you both understand that if your

22   brother fails to comply with the conditions of bond, you

23   could be sued by the government and you could lose your

24   home?   Do you understand that, Mr. Manuel Rydz?

25          MR. MANUEL RYDZ:   I do.

1          THE COURT:  And you, Mr. Jack Rydz?

2          MR. JACOB RYDZ:  Yes.

3          THE COURT:  Okay.  Has your brother or anybody in

4   his family or anybody else, for that matter, made any

5   promises to you that if you lost your home, you would be

6   repaid for it?

7          MR. MANUEL RYDZ:  No, sir.

8          MR. JACOB RYDZ:  No.

9          THE COURT:  All right.  Have you discussed this

10  matter with your wives?

11         MR. MANUEL RYDZ:  Not yet, sir.

12         MR. JACOB RYDZ:  Not yet.

13         THE COURT:  Okay.  I am going to require your

14  wives to sign on this bond as well.

15         Now, in addition to that, since you all are not

16  defendants in this case, I am going to ask you, if we set

17  this bond, if this bond goes through, are you willing to

18  agree that you won't sell your home and you won't borrow

19  any money against it while this case is going on?

20         MR. MANUEL RYDZ:  I do, sir.

21         MR. JACOB RYDZ:  I do, also.

22         THE COURT:  Any questions, Mr. Blakey?

23         MR. BLAKEY:  Nothing with regards to that, Your

24  Honor.

25         THE COURT:  Okay.  Thank you both.  You may step

1   back.

2            MR. MANUEL RYDZ:  Thank you, sir.

3            THE COURT:  All right.  That's the bond in this

4   case.  Mr. Sharpstein, report re: counsel, please?

5            MR. SHARPSTEIN:  Based on circumstances of this

6   case, the lengthy trial that they are talking about and the

7   asset issue, I would ask for at least 3 weeks or 30 days.

8            I don't see it any other way for any counsel, to

9   be honest with you.

10            THE COURT:  Mr. Blakey?

11            MR. BLAKEY:  No objection, Your Honor.  I

12   understand that this is a difficult decision, and it takes

13   a lot of reflection.

14            THE COURT:  All right.  I don't want this to be

15   lost, and what I am saying, obviously, is subject to

16   further consideration down the road.

17            I am going to set report re: counsel and

18   arraignment for Wednesday, April 14th, 2004 at 10:00 a.m.

19   Thank you.

20            MR. SHARPSTEIN:  Thank you, Your Honor.

21            **(Whereupon the proceedings were concluded)**

22

23

24

25

*U.S.A. vs Abraham Rydz, et al - 3/24/04*

1                    **C E R T I F I C A T E**

2          I hereby certify that the foregoing is an accurate

3    transcription of proceedings in the above-entitled matter.

4

5    _____        _____
         DATE                     JERALD M. MEYERS, RPR-CM

6                                 Miami, FL  33128-7797

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25